# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| ROGER DALE BARKER, ) | Case No. 11-04346-TOM-7 |
| ) | |
| Debtor. ) | |

***NOT INTENDED FOR PUBLICATION***

## MEMORANDUM OPINION AND ORDER

This case came before the Court on February 23, 2015, for hearing on the Application for Compensation and Expenses filed by Max C. Pope, Jr. and Joy Beth Smith; the Bankruptcy Administrator's Statement of Review Regarding the Interim Application for Compensation and Reimbursement of Expenses filed by the Bankruptcy Administrator; the Motion to Direct Payments of Funds Held by Chapter 7 Trustee and the Limited Objection to Application for Interim Compensation filed by Marion K. Barker. Appearing before the Court were C. Taylor Crockett, attorney for the Debtor; J. Thomas Corbett, Bankruptcy Administrator; Lee R. Benton for himself, Max C. Pope, Jr., attorney for the Chapter 7 Trustee; Rocco J. Leo, Chapter 7 Trustee; Derek Meek, attorney for Buffalo Rock and James C. Lee, III; Ted Stuckenschneider, attorney for Marion K. Barker; and Jesse Vogtle, attorney for Compass Bank. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) (1994) and the District Court's General Order of Reference Dated July 16, 1984, As Amended July 17, 1984.[1] This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. §

---

[1] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:

> The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

157(b)(2)(A).[2]  This Court has considered the pleadings, arguments of counsel, the exhibits, and the law, and finds and concludes as follows:[3]

## FINDINGS OF FACT[4]

This bankruptcy case was originally filed under Chapter 11 of the Bankruptcy Code and converted to Chapter 7 on March 7, 2013. Rocco Leo, the Chapter 7 Trustee, hired Max C. Pope, Jr. and Joy Beth Smith as counsel for the estate (collectively, "Trustee's Counsel"). On January 14, 2015, Trustee's Counsel filed an interim Application for Compensation and Expenses (the "Application") requesting compensation in the amount of $28,901.50 and reimbursement of expenses in the amount of $4,274.67. In the Application, Trustee's Counsel have divided their time expended and expenses in this case into three categories: "General Time" relating to assisting the Trustee in the administration of the estate, including the sale of guns and personal property belonging to the Debtor; "Buffalo Rock" relating to the prosecution of the estate's claims against Buffalo Rock, Bank of America, and others; and "Mississippi Property Sale" relating to the sale of the Debtor's real property in Mississippi. Trustee's Counsel request compensation and expenses relating only to the General Time and Mississippi Property Sale categories in the Application.[5]

In response to the Application, Marion Barker ("Ms. Barker"), ex-wife of the Debtor, has filed a Limited Objection to Application for Interim Compensation ( the "Objection"), a Motion

---

[2] 28 U.S.C. §157(b)(2)(A) provides as follows:
    (b)(2) Core proceedings include, but are not limited to–
        (A) matters concerning the administration of the estate[.]

[3] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to contested matters in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Bankruptcy Procedure 9014.

[4] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

[5] In the Application Trustee's Counsel makes clear that at this time they are not seeking compensation and expenses incurred in the Buffalo Rock category in the amounts of $20,789.00 and $421.05 respectively. Trustee's Counsel asked that the Court delay ruling on fees and expenses to be awarded in that category until such time that the adversary proceeding is resolved.

to Direct Payments of Funds Held by Chapter 7 Trustee (the "Motion"), and a Memorandum in Support of her Objection and Motion (the "Memorandum"). Ms. Barker asserts that she is owed a domestic support obligation (the "DSO Claim") in the amount of $900,000.00[6] that is entitled to first-priority status pursuant to section 507(a)(1) of the Bankruptcy Code. Ms. Barker objects to the Trustee's Counsel receiving their requested compensation and expenses while her DSO Claim remains unpaid. According to Ms. Barker, section 507(a)(1)(C) allows some of a Trustee's administrative expenses to be paid prior to domestic support obligation claims if the expenses were incurred while collecting funds on a domestic support creditor's behalf, but she asserts that the administrative expenses should not be paid to the extent that a domestic support obligation claimant receives nothing. Ms. Barker argues in her Memorandum:

> If Congress had intended for the Trustee to be paid in all situations before the Domestic Support Creditor, they would have merely made the Trustee and his professionals as Priority Number One instead of Priority Number Two. However, that is not the case. Congress did make the Domestic Support Creditor as a Priority One Creditor and, because they wanted to be sure that the Trustee would try to collect for that Priority Creditor, created a "carve out" in 507(a)(1)(C) for the Trustee to receive his compensation and expenses for monies that he may have collected on the Domestic Support Creditor's behalf.

In her Motion to Direct Payments, Ms. Barker states that she "does not object to the calculation of the fees or expenses being requested, however, [she] does object to the payment of said sums before she is paid to the extent they did not produce an asset available to be distributed to her as the First Priority debt in this case." According to Ms. Barker, the funds that the Trustee is holding have come from three sources: a pre-conversion bank account; the sale of guns and other personal property, some of which Ms. Barker had in her possession prior to the sale; and insurance proceeds from damage to property located on the real estate in Mississippi that had been destroyed by a tornado. In the Memorandum, Ms. Barker takes issue with the outcome of

---

[6] Ms. Barker is also owed a post-petition administrative expense claim in the approximate amount of $150,000.

3

the Trustee's Counsel's efforts in liquidating these assets. Ms. Barker explains that she had taken possession of personal property, including guns, belonging to the Debtor. She had offered to sell the property and take a $20,500.00 credit against her DSO claim but instead was required to turn the property over to the Trustee, who sold the items, along with other guns and personal property, at an auction for $36,500. Ms. Barker notes that under the Trustee's proposal she will receive little to none of the proceeds from the sale, and remarks that had she been allowed to keep the guns the Trustee "could have sold the other guns and personal property he had and Ms. Barker would have received Twenty Thousand Five Hundred Dollars ($20,500.00) towards her claim."

Ms. Barker also states in her Memorandum that within 90 days prior to the Debtor's bankruptcy filing, Compass Bank had taken a lien on some of the Debtor's property, including the real estate located in Mississippi (the "Mississippi Property"). While this bankruptcy case was pending as a Chapter 11, the Debtor gave Ms. Barker a mortgage on the Mississippi Property as part of a compromise to which Ms. Barker agreed "in reliance on Compass Bank releasing its mortgage in the future upon demand because of its preferential status." Ms. Barker asserts that after the bankruptcy case was converted to Chapter 7 the Trustee did not set aside the preferential transfer to Compass Bank. When the improvements on the Mississippi Property were destroyed by a tornado, Compass Bank did not release its lien. Pursuant to a compromise, insurance proceeds in the amount of $440,000.00 were divided among Ms. Barker, former counsel for the Debtor, and Compass Bank: Ms. Barker received $60,000.00, former counsel for the Debtor received $40,000.00, and Compass Bank received the remainder. Also pursuant to the compromise, the Trustee sold the land on which the improvements had been located; 50% of the $20,924.58 net proceeds from the sale were paid to Compass Bank and the Trustee retained

4

the remainder.  *See* Doc. 911, Motion to Direct Payment of Funds Held by Chapter 7 Trustee filed by Compass Bank.

In her Memorandum, Ms. Barker reasons that '[i]f Congress had intended for the Trustee to be paid in all situations before the Domestic Support Creditor, they would have merely made the Trustee and his professionals as Priority Number One instead of Priority Number Two." She contends that there is no case law on point that addresses the impact of section 507(a)(1)(C); thus, in support of her position Ms. Barker refers to an article entitled *Intersection of Divorce and Bankruptcy: BAPCPA and Other Developments*.[7]  According to Ms. Barker, the "article suggests that the fees that should be awarded a trustee in these circumstances is a 'carve out' and does not take to the exclusion of all monies paid to this Support Creditor."  At the hearing on the Application and Objection, counsel for Ms. Barker agreed that the funds from which Trustee's Counsel seek to be paid are funds that otherwise would be available for the payment of her DSO Claim.  Although Ms. Barker states she does not object to the calculation of the compensation and expenses sought by Trustee's Counsel, she does contend that expenses in the amount of $1,400.00 and fees in the amount of $1,475.00 were included in the General Time category but should have been included in the Buffalo Rock category.  Ms. Barker suggests in the Motion that, out of the $37,734.50 available from the sale of guns and personal property and the pre-conversion bank account, the Trustee's Counsel should receive $18,420.08[8] for compensation and expenses for their work relating to the general administration of the case, the Debtor's

---

[7] Norton Annual Survey of Bankruptcy Law, Volume 2010, Issue 2010, written by Lynne F. Riley and Maria C. Furlong.  Counsel for Ms. Barker noted that Ms. Riley is a trustee in Boston as well as an Officer and Director of the National Association of Bankruptcy Trustees.

[8] At this time Trustee's Counsel seek payment of $28,901.50 in compensation and $4,274.67 in expenses.  This requested amount minus the compensation and expenses Ms. Barker believes should be attributed to Buffalo Rock, and minus compensation and expenses attributable to the Mississippi Property, equals the total amount of compensation and expenses that Ms. Barker recommends.

5

former counsel should receive $5,000.00 pursuant to prior Orders, and she should receive $14,314.42 "less whatever sums are allowed for the Trustee."

At the hearing on the Application, Motion, and Objection, the Trustee argued that if counsel would not be compensated for their efforts it would become difficult to find counsel willing to be employed. In a response (the "Response") filed to the Motion and Objection, Trustee's Counsel asserted that Ms. Barker's actual issue with the Application is the reasonableness of the fees in relation to the results obtained. Trustee's Counsel described in the Response various difficulties that arose in administering assets of the estate, including that the Debtor has been unavailable to answer questions, has been unwilling to cooperate, and has hindered Trustee's Counsel's efforts. At the hearing, Trustee's Counsel disagreed with Ms. Barker's contention that $1,475.00 of compensation and $1,400.00 of expenses should be moved from the General Time category to the Buffalo Rock category, although counsel did indicate a willingness to move 0.5 hour of time attributable to review of a counter-claim filed in the Buffalo Rock adversary proceeding. Also in response to Ms. Barker's Motion and Objection, the Bankruptcy Administrator filed a Memorandum of Authorities indicating that legislative history and *In re Yelverton*, No. 09-00414, 2014 WL 36585 (Bankr. D.C. Jan. 6, 2014), support the Trustee's Counsel's position.

## **CONCLUSIONS OF LAW**

The enactment of BAPCPA in 2005 elevated domestic support obligations to first priority status, with a caveat. While administrative expenses allowed under Section 503(b) generally have second priority status pursuant to Section 507(a)(2), Section 507(a)(1)(C) provides that certain of a trustee's administrative expenses shall be paid ahead of domestic support obligations. Section 507 provides, in relevant part:

6

> (a) The following expenses and claims have priority in the following order:
>> (1) First:
>>> (A) Allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case under this title, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative . . . .
>>> . . .
>>> (C) If a trustee is appointed or elected under section 701, 702, 703, 1104, 1202, or 1302, **the administrative expenses of the trustee allowed under paragraphs (1)(A), (2), and (6) of section 503(b) shall be paid before payment of claims under subparagraphs (A) and (B), to the extent that the trustee administers assets that are otherwise available for the payment of such claims.**
>> (2) Second, administrative expenses allowed under section 503(b) of this title . . . .

11 U.S.C. § 507(a)(1)(A), (C) and (a)(2) (emphasis added).[9] There is very little case law addressing section 507(a) as amended by BAPCPA, and much of what exists concerns Chapter 13 cases. However, *Collier on Bankrutcy* addresses the effect of section 507(a)(1)(C) after BAPCPA:

> Section 507(a)(1)(C) provides the trustee with a limited right to receive reimbursement with a priority ahead of that granted by sections 507(a)(1)(A) and (B). . . . This priority applies to certain administrative expenses incurred by a trustee in administering assets that are used to pay such domestic support obligations. The types of administrative expenses are those described in sections

---

[9] House Report 109-31 (109th Congress) accompanying S. 256, better known as the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, explains:

*Sec. 212. Priorities for Claims for Domestic Support Obligations.*

Section 212 of the Act amends section 507(a) of the Bankruptcy Code to accord first priority in payment to allowed unsecured claims for domestic support obligations that, as of the petition date, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such child . . . . Where a trustee administers assets that may be available for payment of domestic support obligations under section 507(a)(1) (as amended), administrative expenses of the trustee allowed under section 503(b)(1)(A), (2) and (6) of the Bankruptcy Code must be paid before such claims to the extent the trustee administers assets that are otherwise available for the payment of these claims.

7

> 503(b)(1)(A) (costs of preserving the estate), 503(b)(2) (compensation awarded under section 330) and 503(b)(6) (fees and mileage under chapter 119 of title 28). If an administrative expense falls into one of these three categories, and if it was incurred by the trustee in administering assets used toward the payment of such claims, the trustee will be entitled to be reimbursed ahead of the holders of priority claims under sections 507(a)(1)(A) and (B). The purpose of this special priority is to incentivize trustees to administer assets that could be used for payment of these claims and to protect trustees who do so.

4 *Collier on Bankruptcy* ¶ 507.03[2] (16th ed. 2015). Thus, *Collier* concludes that if two conditions are met – the administrative expenses are of the kind listed in the statute and assets that could be used to pay a domestic support obligation are administered – the administrative expenses will be paid prior to the domestic support obligation.

At least one bankruptcy court has addressed the effect of section 507(a)(1)(C) in a Chapter 7 case. In *In re Yelverton*, the debtor sought to have the chapter 7 trustee pay the domestic support obligation that the debtor owed to his former spouse. *In re Yelverton*, No. 09-00414, 2014 WL 36585, at *1 (Bankr. D.C. Jan. 6, 2014). The debtor asserted that his former wife was "a first priority Bankruptcy Creditor [under section 507(a)(1)(A)] over the claims of the Chapter 7 Trustee, and over all other Creditors and 'interested' persons, as to being paid her Claims from the property of the Debtor Estate." *Id.* The bankruptcy court, citing section 507(a)(1)(C), stated that the debtor made "an erroneous assertion," and that "[s]uch claims entitled to priority over the domestic support obligation . . . include the trustee's attorney's fees." *Id.* The court noted that litigation in the case was on-going, and concluded that it could not direct payment to the domestic support obligation creditor until the trustee's administrative expense claims were determined. *Id.*

In this case, there is no dispute that the compensation and expenses requested by Trustee's Counsel are administrative expenses under section 503(b)(2). Thus, the question is whether or not the administrative expenses requested were incurred in connection with the

8

administration of "assets that are otherwise available for the payment of such [domestic support obligation] claims." In her Motion, Ms. Barker states that she is objecting to the payment of fees and expenses "to the extent they did not produce an asset available to be distributed to her as the First Priority debt in the case." Ms. Barker does not, however, identify what work Trustee's Counsel performed that did not produce funds that could be used to pay her DSO Claim. Ms. Barker explains in her Memorandum that the funds being held by the Trustee that are available for distribution have come from three sources: a pre-conversion bank account; the sale of guns and other personal property, some of which Ms. Barker had in her possession prior to the sale; and insurance proceeds from the destruction of improvements located on real estate located in Mississippi. The funds from all of these sources are funds due to be distributed to priority unsecured creditors such as Ms. Barker, holders of administrative expenses, and unsecured creditors in accordance with the distribution scheme set out in the Bankruptcy Code; thus, the funds are "otherwise available" for payment of a domestic support obligation. In fact, counsel for Ms. Barker agreed in open Court that the funds at issue are funds otherwise available for payment on her DSO Claim. Both conditions of section 507(a)(1)(C) are met, and Trustee's Counsel is entitled to payment of their requested compensation and expenses prior to payment of the DSO Claim.

Ms. Barker makes what is in effect a policy argument that section 507(a)(1)(C) provides a "carve out" allowing for payment of the Trustee's administrative expenses, but that the administrative expenses should not be paid to the extent that she receives no payment on her DSO Claim. In support of her position, Ms. Barker cites to *Intersection of Divorce and*

*Bankruptcy: BAPCPA and Other Developments* ("the Article").[10]  With regard to payment of a trustee's administrative expenses, the authors of the Article note:

> In addition to expanding the scope of domestic support creditors, BAPCPA further elevated their priority status, moving domestic support obligations from seventh to a first priority position. . . . **These domestic support claims, although ranked first in the Code's current priority scheme, are paid only after the payment of certain administrative expenses, effectively providing a "carve out" to ensure that trustees are compensated for actions taken to prosecute claims and liquidate assets to pay these domestic support creditors.** Courts recognize that, while BAPCPA added several sections to the Code to ensure collection of domestic support obligations, they are still subject to certain of the trustee's administrative expenses.

*Intersection of Divorce and Bankruptcy* (footnotes omitted) (emphasis added).  Section 507(a)(1)(C) does in effect provide a "carve out" where, after payment of administrative expenses, there are funds remaining to be distributed on a domestic support obligation.  However, section 507(a)(1)(C) does not say (nor do the Article or *Collier on Bankruptcy* suggest) that, where both conditions of section 507(a)(1)(C) are met, the administrative expenses will be paid first so long as the domestic support obligation claimant receives some payment as well.

Furthermore, as argued by the Trustee, and as indicated by the Article and *Collier on Bankruptcy*, there is a policy in favor of paying certain of a trustee's administrative expenses to encourage the trustee to pursue assets that could be used to pay a domestic support obligation.  Otherwise, potential counsel may see little incentive and thus be unwilling to undertake employment to pursue potential assets, especially in cases like the one at hand in which the Debtor has asserted his Fifth Amendment rights and has impeded the Trustee's efforts.

---

[10] Lynne F. Riley and Maria C. Furlong, *Intersection of Divorce and Bankruptcy:  BAPCPA and Other Developments*, 2010 Ann. Surv. of Bankr. Law 15, Volume 2010, Issue 2010.  According to the Article, in addition to being an officer and director of the National Association of Bankruptcy Trustees, Ms. Riley serves as a Chapter 7 Trustee for the District of Massachusetts.  Ms. Furlong previously served as counsel to the Chapter 13 Trustee for the District of Massachusetts.

Ms. Barker argues that "[i]f Congress had intended for the Trustee to be paid in all situations before the Domestic Support Creditor, they would have merely made the Trustee and his professionals as Priority Number One instead of Priority Number Two." The Court agrees that Congress apparently did not intend for a trustee to be paid prior to a domestic support obligation claimant in all situations, as Congress limited the qualifying administrative expenses to those identified in subsections (1)(A), (2), and (6) of section 503(b). Any administrative expense of the trustee not identified in those particular subsections are relegated to second priority position under section 507(a)(2). However, the plain language of section 507(a)(1)(C) states that if the conditions are met, the administrative expenses "shall be paid before" domestic support obligation claims. Congress could have provided in the statute that administrative expenses may be paid only a certain percentage of recovered assets before payment to a domestic support obligation creditor, or devised some other method of limiting the amount of administrative expenses before such a claim is paid. Instead, Congress chose to limit administrative expenses to be paid before a domestic support obligation to those expenses specified in section 507(a)(1)(C), and only so long as those expenses were incurred in administering assets that could otherwise be used to pay a domestic support obligation. The compensation and expenses requested at this time by Trustee's Counsel meet these criteria. The Court finds that compensation and expenses relating to the General Time and Mississippi Property categories as requested by the Trustee's Counsel are due to be paid in full.[11]

## CONCLUSION

It is clear Ms. Barker recognizes that at least some of the Trustee's administrative expenses are due to be paid ahead of her DSO Claim. She objects to payment of those expenses

---

[11] Trustee's Counsel agreed in open Court that 0.5 hours could be moved from the General Time category to the Buffalo Rock category.

that were not incurred in administrating an asset available to pay her DSO Claim, and objects to the administrative expenses being paid while she receives nothing. However, Ms. Barker does not explain which administrative expenses are due to be cut other that than implicitly suggesting that those relating to the Mississippi Property not be paid. It is apparent that Ms. Barker is unhappy with the way Trustee's Counsel had dealt with the gun and personal property sale, and Compass Bank's lien on the Mississippi real estate; however, Ms. Barker has no objection to the calculation of compensation and expenses, and thus there is no reason to disallow payment of Trustee's Counsel's requested compensation, less 0.5 hours, and fees that are otherwise due to be paid pursuant to section 507(a)(1)(C).

Therefore, it is **ORDERED, ADJUDGED, and DECREED** that the Application for Compensation and Expenses filed by Max C. Pope, Jr. and Joy Beth Smith is **APPROVED**, less 0.5 hours, and the Trustee is authorized to remit payment to Trustee's Counsel. It is further

**ORDERED, ADJUDGED, and DECREED** that the Limited Objection to Application for Interim Compensation filed by Marion K. Barker is **OVERRULED**. It is further

**ORDERED, ADJUDGED, and DECREED** that the Motion to Direct Payments of Funds Held by Chapter 7 Trustee filed by Marion K. Barker is **DENIED**.

Dated: May 8, 2015 /s/ Tamara O. Mitchell
Tamara O. Mitchell
United States Bankruptcy Judge

xc: Rocco J. Leo, Trustee
    Max Pope, Jr., counsel for Trustee
    Ted Stuckenschneider, counsel for Marion Barker
    Taylor Crockett, counsel for Debtor
    Tom Corbett, Bankruptcy Administrator
    Lee R. Benton
    Derek Meek, counsel for Buffalo Rock and James C. Lee, III
    Jesse Vogtle, counsel for Compass Bank

12

Case 11-04346-TOM7    Doc 950    Filed 05/08/15    Entered 05/08/15 15:44:01    Desc Main
Document    Page 12 of 12